**LUAVASA TAUALA, Claimant**

**v.**

**TA'AVASA F. FALESIGAGO TAUALA, Objector**

**[In the Matter of the Matai Title**
**"TAUALA" of the Village of Ta'u]**

High Court of American Samoa
Land and Titles Division

MT No. 6-88

May 29, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, VAIVAO, Associate Judge, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Claimant, Charles V. Ala'ilima
         For Objector, Togiola T.A. Tulafono

On Motion to Reconsider or for New Trial:

We held that Ta'avasa F. Falesigago Tauala was entitled to hold the Tauala title of the Village of Ta'u, Manu'a. The losing candidate, Luavasa Tauala, brings this motion for reconsideration or new trial. We address the grounds for Luavasa's motion in the order in which they were raised.

## I.    *Disqualification of Associate Judge*

Luavasa argues that one of the four Associate Judges on the panel should have disqualified himself. This argument is based on a suggestion made during the trial that Luavasa had obstructed the installation of a chief who is a cousin of the judge's wife. No motion to disqualify the judge was made during the trial; the issue is raised for the first time by way of the present motion.

A motion to disqualify would almost certainly have been denied even if it had been timely made. Although extended families are more important in Samoa than they are in most Western cultures, the relationship involved in this case was too attenuated and the incident in question too peripheral to require disqualification. If the judge's wife were herself a member of the Tauala family, or even if her cousin were himself one of the contenders, disqualification would probably be appropriate to avoid the appearance of impropriety. If, however, a Samoan judge were required to disqualify himself whenever a party was alleged to have opposed or offended one of his wife's cousins, it would frequently be impossible to assemble a quorum of the Court.

Such a rule would also work to the peculiar advantage of certain kinds of litigants: the more people's cousins somebody had offended, the better his chances of trial by the judges of his choice.

The incident, moreover, was barely mentioned at trial; it was not specifically discussed in the Court's opinion; and, contrary to the

66

central assumption behind the present motion, it played no significant role in the Court's deliberations. It was one in a string of instances in which Luavasa was alleged to have been inappropriately combative or high-handed. Several far more egregious instances of such conduct --- principally Luavasa's own repeated violations of statutes and court orders during the ongoing Tauala title controversy, and his role in the installation of an illegal claimant to the Sotoa title --- did figure heavily in the Court's decision. These instances alone would have compelled our conclusions about this aspect of Luavasa's character. (Even these, however, were overshadowed by other character issues and by other issues altogether. Exclusions from the village council and similar incidents consumed only a few lines in a twenty-page opinion.)

Last but not least, it is highly improper to wait until after the trial and then move for disqualification of the judge. Counsel tries to get around this fundamental rule by suggesting that he and his client did not know before trial that this incident would be brought up. This is no excuse for failing to suggest disqualification after the incident was mentioned at trial. Counsel then suggests that he had no way of knowing that it would be significant to the Court's decision. It was not; but even if it were, Luavasa would have waived his objection by waiting to see which issues would impress the Court (and, not incidentally, who would win and who would lose) before moving to disqualify the judge.

## II.    Support of the Clans --- Factual Contentions

Counsel takes issue with our findings of fact relating to this criterion. We reiterate those findings, with the following additional observations:

a) The "Samoan Affairs letter" on which counsel relies was shown to have been written not as a result of any family decision made in the presence of the Samoan Affairs official who wrote the letter, but because the Samoan Affairs official was told by some unidentified person or persons that Ta'avasa had agreed to withdraw his candidacy. He denies having made such an agreement, and never did withdraw.

b) Although it is apparently true that Tunupopo Laeli is not a registered matai --- and although we do not approve of his failure to register his title in accordance with law --- we did not rely on him for any proposition on which registration would substantially enhance the probable accuracy of his opinion. It is undisputed that he was chosen by the family, with the support of Luavasa himself, for a position of great

67

respect and authority within the family. His statement that many people in the family support Ta'avasa is important evidence, as is his personal support of Ta'avasa.

c) The two recent family meetings on which counsel places his heaviest reliance were not shown to have been representative enough or deliberative enough to be indicative of "the support of a majority or plurality of the clans." The most recent meeting, the only one of which we were presented with detailed evidence, was called on the eve of trial by a prominent supporter of Luavasa and appeared to consist entirely of eight speeches.

d) We hope and trust that we did not "def[y] all logic" by suggesting that some of Luavasa's support was generated by his having illegally undergone the formalities requisite to assumption of the Tauala title. As counsel well knows, many Samoans attach a quasi-sacramental importance to such ceremonies. As opposing counsel put it in 1976 in his application for an order to restrain Luavasa from participating in the *pa'i faleula*, the person who underwent this ritual would be regarded as the Tauala "in the eyes of the family, the village and the whole Samoa" --- no matter what the law said and no matter how many family members did not wish him to undergo the ceremony.

The Court order restraining Luavasa from undergoing the ceremony, and the subsequent orders restraining him from holding himself out as the Tauala, were issued partly in order to ensure a level playing field while each candidate sought to gather and demonstrate support within the family. Luavasa defied these orders. In so doing he gained some of the tactical advantages the orders (and the statutes on which they were based) were designed to deny him. We did not and do not say that no candidate who illegally assumes a title can ever prove that he has the support of the family. Nor, however, could we simply ignore this factor in our assessment of the candidates' relative support. Its effect was to take a muddled situation and muddle it even more.

e) Finally, Luavasa makes the ironic claim that the Court ignored clear evidence of his overwhelming support by failing to give him credit for this person or that one who *formerly* supported him but who now supports Ta'avasa. This is irrelevant, if not positively harmful to Luavasa's case. The Court must make its assessment of family support as of the time of trial. Assuming the truth of Luavasa's assertion that Lefiti, Laeli, and others formerly supported Luavasa but later

68

became angry with him and went over to Ta'avasa, they still count as supporters of Ta'avasa.

### III. Support of the Clans --- Legal Contention

Even if we had found that Luavasa had the support of the plurality of the clans, it would have been a close decision. Under the circumstances of the present case, a relatively indecisive showing on this criterion would have been outweighed by our stronger findings for Ta'avasa on the third and fourth criteria.

Counsel for Luavasa, however, seems to argue that a finding for one candidate on the second criterion outweighs findings for the other candidate on the third and fourth criteria, invariably and as a matter of law. He bases this argument on the statutory mandate that the Court "shall be guided by the [four statutory] considerations, in the priority listed." A.S.C.A. § 1.0409. The first of these considerations is blood relation to the title; the second is support of the clans; the third is "forcefulness, character and personality" and "knowledge of Samoan customs"; the fourth and final criterion is "value . . . to the family, village and country." *Id.*

We read the statute to require only that we give more weight to each criterion than to each of those that follow it. This is not inconsistent with the idea that some consideration should also be given to the relative margins by which various candidates prevail on each of the four criteria. Thus a strong showing on the second criterion could outweigh a relatively weak one on the first criterion --- so that, for instance, a candidate with strong family support and a "25% relationship" to the title could prevail over a candidate with weak family support but a "50% relationship." Similarly, an Eagle Scout with abundant knowledge of Samoan custom and strong family support might prevail over an axe-murderer with no knowledge of Samoan custom but slightly stronger family support.

More to the point, a candidate might win by tying his opponent on blood relationship; making a creditable but not quite victorious showing on clan support; and prevailing hands down on character, knowledge of Samoan custom, value to the family, etc. This would be the situation in which Ta'avasa would find himself if we had found Luavasa to prevail on the clan support criterion.

We are acutely aware of the danger that giving excessive weight to "subjective" aspects of the matai selection statute could lead to the Court's imposing its own values over against those of the family. We try to guard against this tendency; it is not going too far to say that we agonize over it. The statute, however, explicitly requires us to give some weight to each of the four criteria and to make written findings on all four. *See* A.S.C.A. § 1.0409(d).

The alternative interpretation of the statute suggested by counsel would seem inconsistent with these statutory requirements. If a finding for one candidate on the first or second criterion necessarily precluded a victory for another candidate who prevailed on subsequent criteria, then it would be superfluous to consider the subsequent criteria at all. A son of a former matai would have a "50% blood relationship" and would always prevail over a grandson, who would have only a "25% relationship," regardless of their other qualifications. This has never been the law.

### IV.    *Character, Value to the Family, Etc.*

Counsel for Luavasa primarily objects to the relative weight we attached to various undisputed facts respecting the third and fourth statutory criteria. We have considered the arguments of counsel and stand by our original opinion on these matters.

Counsel does, however, raise one factual contention that must be addressed. He asserts that the crimes Luavasa committed while in the military were "apparently minor AWOL charges." At the hearing on this motion the Court pointed out that the record was at least as consistent with serious crimes as with minor ones. The Court also observed that Luavasa's testimony and demeanor when confronted with the charges did not seem consistent with the proposition that they were trivial infractions. In our original opinion we were not so much concerned with the crimes themselves as with the fact that he lied under oath when confronted with them. Since Luavasa himself seemed to be putting the seriousness of the offenses at issue, however, we offered his counsel an opportunity for a supplemental evidentiary hearing on this issue. Counsel declined this offer.

We note also counsel's positive assertion that there were only two courts martial. The record is at least as consistent with the proposition that there were three. Luavasa finally admitted to two, after initial denials and evasions. When asked a detailed and specific question

about a third court martial (whether he was not also convicted "on October 24, 1967," of "making . . . a false statement with intent to deceive") he did not deny it but said he did not remember.

Accordingly, the motion is denied.

It is so ordered.